UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANN B. S.,<br><br>Petitioner,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[1]<br><br>Respondent. | Case No. 4:20-CV-00354-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Jann S's Petition for Review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits, filed on July 16, 2020. (Dkt. 1.) The Court has reviewed the Petition, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the ALJ's decision and dismiss the petition.

[1] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

## PROCEDURAL AND FACTUAL HISTORY

On November 28, 2017, Petitioner protectively filed a Title II application for a period of disability and disability insurance benefits. She alleges a disability onset date of July 16, 2017, due to arthritis, migraines, chronic pain syndrome, chronic fatigue syndrome, hypothyroidism, insomnia, sleep apnea, insulin resistance, leaky gut, and IBS. (AR 228.) Petitioner's application was denied upon initial review and upon reconsideration. (AR 14.) A hearing was held before Administrative Law Judge (ALJ) Stephen Marchioro on August 14, 2019, at which the ALJ heard testimony from Petitioner and a vocational expert. (AR 14.)

On September 20, 2019, ALJ Marchioro issued an unfavorable decision, finding Petitioner was not under a disability from July 16, 2017, through the date of the decision. (AR 14 - 32.) Petitioner timely requested review by the Appeals Council, which denied her request on May 13, 2020, making the ALJ's decision final. *See* 42 U.S.C. § 405(h).. (AR 1-6.)

Petitioner timely filed this action seeking judicial review of the ALJ's decision. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of her alleged disability onset date of July 16, 2017, Petitioner was fifty-seven years of age. (AR 46.) Petitioner graduated from high school and obtained an associate degree in cosmetology. (AR 48.) She has past work experience as a human resources clerk, receptionist, and accounts receivable clerk. (AR 66.)

## ISSUES FOR REVIEW

1. Whether the ALJ correctly determined that Petitioner's headaches did not meet or equal Listing 11.02 at step three?

2. Whether the ALJ reasonably evaluated the medical opinion evidence?

3. Whether the ALJ's RFC determination was in error for not incorporating mental functional limitations?

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision, unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26

(9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists where the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1117–1122 (9th Cir. 2012).

## DISCUSSION

### 1. Evaluation of Petitioner's Migraines at Step Three

#### A. Legal Standard

The ALJ follows a five-step sequential process in determining whether a person is disabled or continues to be disabled within the meaning of the Social Security Act (SSA). *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4)(i)-(v); 20 C.F.R. §§ 404.1594, 416.994. As relevant here, where a claimant is found to have at least one severe impairment at step two of the sequential process, *see* 20 C.F.R. § 416.920(a)(4)(ii), step three requires the ALJ to evaluate whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1 (§§ 416.920(a)(4)(iii),

416.920(d); Listing of Impairments, 20 C.F.R. § 416.925); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to have “an impairment or combination of impairments that meets or equals a condition outlined in the ‘Listing of Impairments,’ then the claimant is presumed disabled at step three [of the sequential process], and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs.” *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)).

“To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.” *Tackett*, 180 F.3d at 1099 (emphasis in original). “To *equal* a listed impairment, a claimant must establish symptoms, signs, and laboratory findings ‘at least equal in severity and duration’ to the characteristics of a relevant listed impairment, or, if a claimant’s impairment is not listed, then to the listed impairment most like the claimant’s impairment.” *Id.* (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)).

A claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that his or her impairments meet or equal a particular listing. *Bowen v. Yuckert*, 482 U.S 137, 146, n. 5 (1987). If the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or otherwise, as to how his or her combined impairments equal a listing. *See Lewis*, 236 F.3d at 514. Although it is the claimant’s burden to establish, “[a]n ALJ must evaluate the relevant evidence before concluding that a claimant’s impairments do not meet or equal a listed

impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id*. at 512. However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if the ALJ adequately summarizes and evaluates the evidence. *Id.*; *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

**B. Analysis**

At step two, the ALJ found Petitioner's obesity, degenerative disk disease of the cervical spine, migraine headaches, irritable bowel syndrome, and hypothyroidism are severe impairments. (AR 16.) At step three, the ALJ considered whether Petitioner's migraine headaches constituted an impairment that meets or medically equals the severity of Listing 11.02B or 11.02D. The ALJ concluded that "there is no evidence that the claimant's primary headache disorder medically equals a listing, either individually or in combination with another impairment." (AR 20.) There is no discussion in this section of the ALJ's written determination as to how the ALJ arrived at his conclusion. The ALJ did, however, discuss the medical evidence of record, including treatment of Petitioner's migraines, when assessing Petitioner's credibility at step four. (AR 20 – 29.)

Petitioner argues the ALJ erred by simply making a boilerplate finding without further analysis that her migraines did not meet or equal Listing 11.02. (Dkt. 17 at 10 - 11.) She cites evidence that Petitioner suffered from migraines and their associated symptoms several times each week in late 2017, and that the evidence of record indicated Petitioner's headaches could last for greater than 24 hours even with medication. She

contends this evidence establishes the criteria for Listing 11.02B and 11.02D, requiring remand and an award of benefits.

Respondent contends that the ALJ reasonably determined Petitioner's allegations of severe migraine headaches were unreliable and, further, that Petitioner failed to meet her burden to offer a plausible theory that her migraines met or medically equaled Listing 11.02. Resp. Brief at 18 – 19. (Dkt. 18.) For the reasons that follow, the Court finds the ALJ did not commit legal error at step three.

Migraines are not a specifically listed impairment. If an impairment is not described in the Listing of Impairments, the regulations required that the ALJ "compare [a claimant's] findings with those for closely analogous listed impairments." 20 C.F.R. § 416.926(b)(2) (effective March 27, 2017). The SSA's Program Operations Manual System ("POMS") similarly directs that, in determining medical equivalence for unlisted impairments, the ALJ should: (1) discuss the claimant's impairments, medical findings, and nonmedical findings; (2) identify the most closely analogous listing; (3) compare the findings of the claimant's impairment to the findings of the most closely analogous listing; (4) explain why the findings are at least of equal medical significance to the findings of the most closely analogous listing; and (5) cite the most closely analogous

listing used to determine medical equivalence. *See* POMS DI 24505.015(B)(6)(c) (effective March 29, 2017); POMS DI 24508.10 (effective Feb. 13, 2018).[2]

The most analogous listing for determining medical equivalence for migraines is Listing 11.02. *Woolf v. Saul*, No. 1:18-cv-00280-CWD, 2019 WL 4580037, at *5 (D. Idaho Sept. 20, 2019) (citing *Rader v. Comm'r of Soc. Sec.*, No. 2:17-CV-00131-CWD, 2018 WL 4087988, at *3 (D. Idaho Aug. 27, 2018)). Listing 11.02 provides, in relevant part:

> Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
>
> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>
> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>
> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 3. Interacting with others (see 11.00G3b(ii)); or
> 4. Concentrating, persisting, or maintaining pace (see

[2] The POMS in effect prior to the ALJ's decision included an example of rationale for a medical equivalence determination involving migraine headaches - likening migraines to impairments found in listing 11.02 for epilepsy. POMS DI 24505.015. However, the POMS applicable at the time of the ALJ's decision here no longer includes such examples. POMS DI 24508.10 (effective Feb. 13, 2018); *Woolf*, 2019 WL 4580037, at *5. Regardless, the instructions directing the ALJ's consideration of whether impairments not described in the listings are medically equivalent to a listing, are the same in both versions. *Compare* POMS DI 24505.015, with POMS DI 24508.10. Removal of the example involving migraine headaches did not alter the analysis the ALJ was required to undertake at step three.

> 11.00G3b(iii)); or
> 5. Adapting or managing oneself (see 11.00G3b(iv)); or
>
> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 3. Interacting with others (see 11.00G3b(ii)); or
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § Pt. 404, Subpt. P. App.1 part A2 (effective March 27, 2017).

Petitioner has the burden of proof at step three. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) ("claimant bears the burden of proving steps one through four, consistent with the general rule that '[a]t all times, the burden is on the claimant to establish her entitlement to disability insurance benefits.'"); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.").

To determine whether a primary headache disorder is equal in severity to the criteria in Listing 11.02B, there must be evidence of the following:

> [a] detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary

> headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Evaluating Cases Involving Primary Headache Disorders*, SSR 19-4P (S.S.A. Aug. 26, 2019). The same factors are evaluated for Listing 11.02D, with the addition of considering whether "the overall effects of the primary headache disorder on functioning results in marked limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Id.*

At the hearing before the ALJ and in her opening brief, Petitioner relies solely upon evidence in the record concerning the frequency with which she suffered from headaches and that she takes prescribed medications to control them. She contends this evidence, standing alone, establishes the requirements of either Listing 11.02B or D. Pet. Brief at 12. (Dkt. 17); (AR 53.) Petitioner, who bears the burden at step three, fails to explain how this evidence meets or equals the criteria of either Listing 11.02B or D. She does not point to evidence in the record establishing any detailed description of her headaches, any associated phenomena, or the need to lay in a darkened and quiet room, because there is none. Other than a few medical records setting forth her subjective complaints and her medication list, she does not demonstrate that she meets or equals the criteria necessary for Listing 11.02B or D.

Nor does Petitioner's assertion that the ALJ's step three finding is unexplained warrant reversal in this matter. While it is generally true that a boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not meet or equal a listing, the Court of Appeals for the Ninth Circuit has recognized that an ALJ need not state the reasons for his step three determination under a specific heading so long as the evidence is discussed in the ALJ's decision. *Sandoval v. Colvin*, No. CV-13-00448-TUC-CRP, 2015 WL 1469783, at *9 (D. Ariz. Mar. 31, 2015) (citing *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001)).

Here, the Court agrees with Respondent that the ALJ's discussion of Petitioner's headaches elsewhere in the decision supports the ALJ's step three finding. *See Lewis*, 236 F.3d at 513. There can be no dispute that the ALJ stated the reasons for his determination that Petitioner did not establish that she meets or equals the criteria necessary for Listing 11.02B or D. The ALJ expressly rejected Petitioner's contention concerning the intensity, persistence, and limiting effects of Petitioner's headache symptoms. (AR 20.) For instance, he rejected Petitioner's allegation that she suffered fifty-one migraine headaches over a ninety-day period by observing she did not seek care at the emergency room or any other facility, yet she sought emergency care for a single bout of sinusitis. (AR 20.) The ALJ pointed out the absence of evidence that Petitioner's migraines required further intervention, such as injections, despite Petitioner's claim that she received injections from "out of network" providers. (AR 20 – 21.) The ALJ noted that the record reflected Petitioner reported her medication was effective if she caught the onset of her headache

in time. (AR 21.) And the ALJ cited to pain clinic records dated July 25, 2017, during which Petitioner complained of a headache, but that physical examination findings noted she was seated comfortably, with intact memory, judgment and insight, normal mood and affect, and that she was pleasant and cooperative. (AR 21.) Similar observations upon a presenting complaint of headache were recorded in medical records dated August 10, 2017, and the ALJ noted that a practitioner's assessment on August 31, 2017, included "stable or improved migraine headaches." (AR 22.)[3] Brain MRI studies on September 22, 2017, were noted as normal. (AR 25.)

The ALJ also discussed the evidence upon which Petitioner relies, specifically the opinion letter from Trilby Wedler, NP-C, dated July 3, 2019. Pet. Brief at 12. (Dkt. 17.) Wedler opined that Petitioner's activity levels were limited by migraine headaches, which averaged twelve per month and lasted at times more than twenty-four hours. (AR 28.) The ALJ found the opinion not persuasive, on the grounds that Wedler's treatment records did not support the opinion. (AR 28.) The ALJ noted that Wedler consistently charted unremarkable findings upon examination, and that Petitioner was alert and oriented, with normal mood and affect. (AR 28.) Petitioner does not challenge the ALJ's findings with respect to Wedler's opinions. *See* n.3.

Here, the ALJ made sufficient findings such that the Court understands the bases

[3] Petitioner does not contest the ALJ's adverse symptom testimony finding, and therefore the Court has no obligation to review it. *Carmickle v. Astrue*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008 (failure to argue issue with specificity in briefing absolves the court from addressing the issue); *Paladin Assocs., Inc. v. Mont. Power Co*., 328 F.3d 1145, 1164 (9th Cir. 2003) (noting that we "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief").

for the decision. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding the ALJ's summary of the medical record and findings regarding the claimant's subjective complaints sufficient to provide an "adequate statement of the 'foundations on which the ultimate factual conclusions are based.'"). Consequently, the Court finds Petitioner has not carried her burden at step three, and has not presented a basis upon which the Court can conclude that her migraines meet or equal Listing 11.02B or D. Substantial evidence of record suggests otherwise. The Court therefore finds Petitioner has not established that the ALJ's step three determination was in error.

**2. The ALJ Properly Considered the Opinion Evidence**

Petitioner argues the ALJ erred in his assessment of the medical opinions of Nels M. Sather, Ph.D., who conducted a consultative examination on May 4, 2018, and Michael Dennis, Ph.D., a state agency reviewing physician, who rendered an opinion based upon his review of the record on May 24, 2018. (AR 23, 27 - 29.) Respondent disagrees, asserting the ALJ appropriately considered the opinion evidence. The Court finds the ALJ properly considered the opinion evidence.

**A. Legal Standard**

For claims filed on or after March 27, 2017, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from

medical sources. 20 C.F.R. § 404.1520c(a).[4] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical findings (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements)." 20 C.F.R. §404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ must explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinion[ ]" will be. § 416.920c(c)(2). Similarly, for consistency, "[t]he more consistent a medical opinion[ ]" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion[ ]" will be. § 416.920c(c)(2). The ALJ may, but is not required to, explain how other factors were considered. *Id.* However,

[4] Because Petitioner's claim was filed after March 27, 2017, the Court applies the new regulations in 20 C.F.R. § 404.1520c. The new regulations changed how the SSA evaluates medical opinions and prior administrative medical findings by eliminating use of the term "treating source" as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. § 404.1520c (The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).

when two medical opinions or prior administrative findings "about the same issue are both equally well-supported...and consistent with the record...but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3).

**B. Dr. Sather's Opinion**

Dr. Sather conducted a psychological evaluation on May 4, 2018, at the request of Social Security Disability Determinations Services. (AR 488.) Dr. Sather reviewed treatment records, interviewed Petitioner, and conducted a mental status examination consisting of several objective tests. (AR 488 – 492.) Petitioner reported short term memory loss beginning in her mid-thirties, resulting in word confusion, naming problems, and expressive language difficulties. (AR 488.) Petitioner also reported cognitive problems beginning approximately seven or eight years prior to the examination date. (AR 488.) Petitioner claimed that these problems affect her ability to understand, comprehend, follow instructions, concentrate, sustain attention, remember, process new information, and recall. (AR 489.)

Dr. Sather observed Petitioner was oriented x3, and that she was congenial and cooperative. (AR 490.) He administered three memory tests, which reflected below average recent memory (she was able to remember 5 digits forward and 3 digits backward); below average recent memory (she was able to remember 1 out of 3 one word items after 5 minutes); average past memory (answering 7 out of 7 past memory/personal history questions); and had a good fund of information (able to answer 8 out of 10

information questions). (AR 490.) She exhibited below average ability to calculate simple math problems (able to answer 4 out of 7 calculation questions); and she exhibited average ability to think abstractly (able to correctly interpret 3 out of 4 proverbs, sensibly answered 3 out of 4 judgment questions, and able to define the salient elements of 5 out of 8 similarities questions). (AR 491.)

Based upon the objective testing, Dr. Sather opined that Petitioner retained the ability to follow through with simple, one step oral instructions; she forgets or becomes confused with complex or multiple step oral instructions; and that she can follow written instructions so long as she could refer back to them. (AR 491.) Dr. Sather relied upon Petitioner's self-report concerning her ability to sustain attention and persist with tasks, noting that Petitioner indicated she is able to start tasks but has difficulty sustaining attention and concentrating long enough to finish them. (AR 491.) He noted also that Petitioner reported her poor memory and cognitive difficulties prevent her from doing her job. (AR 492.) Dr. Sather's diagnostic impression was "mild neurocognitive disorder due to Alzheimer's Disease." (AR 492.) He concluded that Petitioner's ability to perform work-related mental activities such as understanding, remembering, sustaining concentration, persisting with tasks, and adapting to workplace change is "markedly impaired." (AR 492.)

The ALJ discussed both the supportability and consistency of Dr. Sather's opinion. First, he found the opinion internally inconsistent, on the grounds the opinion was not completely supported by Dr. Sather's own findings. (AR 27.) For instance, the

ALJ noted Petitioner exhibited good hygiene and grooming; good eye contact; organized thought process; and that she was oriented, congenial, and cooperative. (AR 27.) The ALJ noted the inconsistencies with regard to the recent versus past memory tests; took issue with Dr. Sather's diagnosis of Alzheimer's disease despite examining Petitioner one time; and the ALJ noted the complete absence of any other testing or similar diagnosis in the medical records of Dr. Sather and others. (AR 27.)

The ALJ next found that Dr. Sather's opinion was not generally consistent with the overall record, citing specific examples where treating providers consistently noted Petitioner was alert, oriented, and attentive. (AR 28.) The ALJ supported his determination with citations to the record noting Petitioner's recent and remote memory were intact, her speech was fluent, comprehension was normal, mood and affect were normal, and that her judgment and insight were intact. (AR 28.) The ALJ also discussed Dr. Girard's records where he noted normal comprehension, intact memory, and appropriate insight and judgment. (AR 28.) Finally, the ALJ injected his own observations, noting Petitioner demonstrated "excellent recall" during the hearing, and that her presentation was "significantly inconsistent" with her allegations. (AR 29.)

Petitioner argues the ALJ's reasons for finding Dr. Sather's opinion unpersuasive are not supported by the record. She contends her underlying symptoms support Dr. Sather's diagnostic impression of mild cognitive disorder and that the majority of the examination findings the ALJ cited in support of his determination are irrelevant or unrelated to Petitioner's ability to maintain concentration and pace. Had the ALJ found

Dr. Sather's opinion concerning her "marked" inability to maintain concentration and pace persuasive, Petitioner contends she would have been found disabled. (AR 70.)

As noted above, after discussing Dr. Sather's report, the ALJ found his opinion that Petitioner would be limited to simple, routine tasks due to her "marked" inability to maintain concentration and pace inconsistent with his own examination observations and unsupported by the evidence in the record. The ALJ cited to normal mental status examinations, that Petitioner was observed to be pleasant and cooperative, she had good concentration through out the cognitive testing, and that providers consistently documented Petitioner's normal comprehension, judgment, and insight. He also relied upon his own observations of Petitioner's ability to concentrate, recall information, and answer questions throughout the duration of the hearing. Petitioner's argument that the ALJ's citation to these normal mental status examinations and her congenial attitude are irrelevant is without merit. Petitioner may disagree with the ALJ's evaluation of the mental status examinations and other evidence in the record, but the fact that the evidence may support an opposite conclusion is not grounds for reversal. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) ("If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

Accordingly, the Court finds substantial evidence supports the ALJ's consideration of Dr. Sather's medical opinion.

### C. Dr. Dennis's Opinion

Dr. Dennis reviewed the record, including Dr. Sather's report, and issued an opinion dated May 24, 2018, that Petitioner exhibited a mild inability to understand, remember, or apply information, and a moderate inability to concentrate, persist, or maintain pace. (AR 107 – 108.) The ALJ found Dr. Dennis's opinions persuasive and consistent with the overall record, with the exception of his opinion regarding Petitioner's ability to concentrate, persist, or maintain pace. (AR 27.) The ALJ cited to evidence undermining this aspect of Dr. Dennis's opinion, which included Petitioner's testimony that she finished what she started; watched television; listened to audio books; crafted; crocheted; had the ability to handle money and her own bank accounts; used a computer; and had a driver's license. (AR 18, 27.) The ALJ also cited to medical records where treatment providers recorded that Petitioner's recent and remote memory was intact, her speech was fluent, her comprehension was normal, and she consistently appeared alert, oriented, and attentive. (AR 27.)

Petitioner argues there was not substantial evidence supporting the ALJ's finding, because, in her view, the evidence relied upon by the ALJ is not relevant to Petitioner's ability to concentrate, persist, or maintain pace. However, the Court finds the evidence cited by the ALJ is the kind of relevant evidence that a reasonable mind could accept as adequate to support his conclusion. Again, while Petitioner may disagree with the ALJ's evaluation of the evidence in the record, the fact that it may support an opposite conclusion is not grounds for reversal. The Court finds there is substantial evidence

supporting the ALJ's consideration of Dr. Dennis's medical opinions.

**3. Petitioner's RFC**

Petitioner argues the ALJ committed error because he declined to include a limitation in the RFC accounting for Petitioner's deficits in concentration, persistence, and pace, despite accepting that such limitations exist. Petitioner points to the ALJ's step two finding that she has a mild limitation in her ability to concentrate, persist, or maintain pace. (AR 18.) Upon finding Petitioner's medically determinable mental impairments cause no more than mild limitation in any of the four functional areas,[5] the ALJ determined Petitioner's mental impairments are non-severe. (AR 18.) Petitioner argues that these non-severe limitations, which the ALJ recognized exist, should have been incorporated into the ALJ's RFC determination, and that failure to do so constitutes error.

The RFC is the most a person can do, despite their physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The determination of a claimant's RFC is an administrative finding reserved to the Commissioner that is based on "all of the relevant medical and other evidence," including medical opinion evidence, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *See* SSR 96–8p; 20 C.F.R. §§ 404.1527(d), 404.1545(a)(3), 404.1513(a)(2). Regardless of severity, the ALJ is required to consider all of a claimant's medically determinable impairments, including medically

[5] The four functional areas are outlined in 20 C.F.R. § 404.1520a(c)(3), and consist of activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

determinable impairments that are not severe. *See* 20 C.F.R. § 404.1545(a)(2). The ALJ is "responsible for translating and incorporating medical findings into a succinct" RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

Here, the ALJ determined that Petitioner retained the ability to perform sedentary work with certain physical exertional limitations consistent with the record, Petitioner's testimony, and the medical opinions. (AR 20.) As for her mental impairments, the ALJ concluded that her past relevant work as a personnel clerk, receptionist, and accounts receivable clerk does not "require the performance of work-related activities precluded by the Claimant's" RFC. (AR 29.) At the hearing, the ALJ explored whether jobs would be available to Petitioner if she was limited to work consisting of only simple, routine tasks. (AR 70 – 71.) The vocational expert was of the opinion that all work would be precluded if Petitioner were so limited. (AR 70 – 71.) The ALJ's RFC determination included no such limitation. (AR 20 – 29.) In so finding, the ALJ discussed the applicable standard; Petitioner's physical and mental impairments, including impairments that are not severe; the medical records relied upon; and the reasoning underlying the RFC determination. (AR 20 - 29.) As outlined above, the ALJ did not commit harmful legal error in his consideration of the medical record and opinion evidence.

Petitioner relies upon on *Hutton v. Astrue*, 491 Fed. Appx. 850 (9th Cir. 2012), arguing the ALJ should have performed a more detailed analysis of Petitioner's mental

impairments.[6] In *Hutton*, the Ninth Circuit found the ALJ erred by failing to include the claimant's PTSD in the assessment of the claimant's RFC. At step two, the ALJ determined the claimant's PTSD was a medically determinable impairment, but was non-severe pursuant to 20 C.F.R. § 404.1520a(c)(3). The court observed that, pursuant to 20 C.F.R. § 404.1545(a)(2), the ALJ was required to consider the PTSD in determining the claimant's RFC, but he did not. *Id*. at 850–51. Instead, the ALJ discredited the claimant, his treating physicians' opinions, and the Veterans Administration's disability rating. *Id*. at 850. The court did not, however, base its reversal on these decisions by the ALJ. *Id*. Instead, the court took exception to the ALJ's mischaracterization of the claimant's wife's testimony, and in turn the ALJ's finding that the claimant lacked credibility. *Id*. The ALJ found the claimant's PTSD claims were "in great doubt" and excluded the claimant's PTSD from consideration, despite recognizing it as a medically determinable, although non-severe, impairment. *Id*. The Ninth Circuit held this was legal error.

Here, the ALJ specifically considered Petitioner's non-severe mental impairments in evaluating Petitioner's RFC. In particular, he considered the opinions of state agency medical consultants Michael Dennis, Ph.D., Peter Bradley, Ph.D., Letitia Sandrock, Psy.D., and consultative examiner Nels Sather, Ph.D. With the exception of Drs. Dennis and Sather, none of the other reviewing physicians considered the evidence sufficient to evaluate Petitioner's claimed mental impairments. (AR 27.) And, as discussed above, the

[6] *Hutton* is an unpublished decision that is not binding precedent on this court. *See generally* Fed. R. App. Proc. 32.1. Nonetheless, *Hutton* is distinguishable.

ALJ found the opinions of Drs. Sather and Dennis unpersuasive with regard to their evaluation of Petitioner's ability to maintain concentration, persistence, and pace.

The ALJ found that Petitioner's reported symptoms were disproportionate to the objective findings in the medical record, and inconsistent with Petitioner's own testimony. The ALJ supported these findings with specific references to inconsistencies in the record. (AR 20 – 27.) The ALJ therefore concluded Petitioner's statements concerning the intensity, persistence, and limiting effects of her cognitive symptoms were not consistent with the record, and concluded that her past relevant work does not require performance of work-related activities precluded by Petitioner's RFC.

The ALJ found Petitioner's mild mental limitations were not sufficiently severe to limit her ability to work at the sedentary exertional level, and the ALJ appropriately determined Petitioner could perform her past relevant work as a personnel clerk, receptionist, and accounts receivable clerk. The Court finds the ALJ considered Plaintiff's mild mental limitations in his RFC analysis. (AR 20 – 29.) Accordingly, the Court finds the ALJ's assessment of Petitioner's functional limitations in the RFC is supported by substantial evidence and free of harmful error.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and the petition for review is **DISMISSED**.

DATED: September 02, 2021

UNITED STATES COURTS DISTRICT OF IDAHO

Candy W. Dale
Chief U.S. Magistrate Judge